IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BMO HARRIS BANK N.A.,

        Plaintiff,

v.                                       Civil Action No. 3:20-cv-570

64 WAYS TRUCKING/HAULING
LLC, et al.,
        Defendants.

## OPINION

64 Ways Trucking/Hauling LLC ("64 Ways"), Shareef Atkins, and Jermaine Greene (collectively, the "defendants") defaulted on a loan that BMO Harris Bank N.A. ("BMO") extended to 64 Ways to buy vehicles and equipment for its trucking business. BMO sued the defendants to recover the money and collateral owed to it under the loan agreement. In July 2020, BMO served the defendants with the summons and complaint. The defendants failed to file responsive pleadings, and BMO moved for entry of default. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered default on September 18, 2020. BMO now moves for default judgment under Rule 55(b).

### I. FACTS ALLEGED IN THE COMPLAINT

In 2017 and 2019, BMO and 64 Ways entered loan and security agreements (the "loan agreements"). Under the loan agreements, BMO provided 64 Ways money to buy vehicles and equipment for its trucking business. The agreements identified three tractors as collateral to secure the loan (the "collateral"). Pursuant to separate guaranty agreements (collectively, the "guaranty agreements"), Atkins and Greene guaranteed 64 Ways's performance under the loan agreements.

64 Ways failed to make the required payments under the loan agreements. On January 24, 2020, BMO told 64 Ways, Atkins, and Greene, that, because 64 Ways defaulted on the loan agreements, BMO intended to accelerate the amounts due under the loan agreements and repossess the collateral. The defendants have neither paid the amount due under the loan agreements nor returned the collateral to BMO.

## II. **DISCUSSION**

A defendant in default admits the well-pleaded factual allegations in the complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Thus, in reviewing a motion for default judgment under Rule 55(b), courts accept as true the plaintiff's well-pleaded allegations regarding liability. *Id.* Courts must then determine whether the allegations support the relief sought. *Id.*

\* \* \*

BMO alleges breach of contract claims against (1) 64 Ways for its failure to fulfill its obligations under the loan agreement and (2) Atkins and Green for their failure to fulfill their obligations under the guaranty agreements.[1] To succeed on a breach of contract claim under Illinois and Texas law,[2] BMO must prove: (1) the existence of a valid contract, (2) breach by the defendants, (3) performance by BMO, and (4) damages. *USAA Tex. Lloyds Co. v. Menchaca*,

---

[1] Although BMO's complaint contains five counts, it bases its motion for default judgment exclusively on the defendants' breaches of their contractual obligations. (ECF No. 14, at 4 ("This case is a clear-cut collection action premised upon 64 Ways' and [Greene's and Atkins's] breach of their contractual obligations to Plaintiff."). Thus, BMO apparently seeks default judgment based on the breach of contract claim against 64 Ways (Count Three) and the breach of guaranty claim against Atkins and Greene (Count Four).

[2] Texas law governs the 2017 loan agreement. (ECF No. 1-1 ¶ 7.6). Illinois law governs the 2019 loan agreement. (ECF No. 1-2 ¶ 7.6).

2

545 S.W.3d 479, 501 n.21 (Tex. 2018); *Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 529 (Ill. App. Ct. 1993). BMO adequately pleads all four elements.

The loan agreements and guaranty agreements are valid contracts. (ECF Nos. 1-1, 1-2, 1-4.) The defendants failed to fulfill their contractual obligations to BMO. (ECF No. 1 ¶¶ 17-29, 33-35.) BMO has performed under the contracts. (ECF No. 1 ¶ 37.) And BMO has suffered damages because of the defendants' breaches. (*Id.* ¶ 30-35.) Thus, BMO has adequately pled breach of contract claims against the defendants.

### III. RELIEF

Having established liability for breach of contract, the Court must next determine the appropriate relief. "Although well-pleaded factual allegations are accepted as true for default judgment purposes, a party who defaults does not admit the allegations in the claim as to the amount of damages." *S. Bank & Tr. Co. v. Pride Grp., LLC*, No. 2:14cv255, 2015 WL 410726, at *4 (E.D. Va. Jan. 28, 2015). Accordingly, a court must "independently calculate the appropriate amount of damages." *Id.*

BMO seeks (1) actual damages, plus interest; (2) reasonable costs and attorneys' fees; (3) "an Order of Possession in favor of Plaintiff in and to the Collateral"; and (4) an injunction requiring the defendants to divulge the collateral's location and surrender the collateral to BMO. (ECF No. 14, at 8-9.)

#### *A. Actual Damages and Interest*

64 Ways has a contractual obligation to pay all principal and interest due under the loan agreements. (ECF No. 1-1, at 1; ECF No. 1-2, at 1.) Atkins and Greene guaranteed 64 Ways's performance. (ECF No. 1-4.) Due to BMO's acceleration of the amount owed under the agreements, 64 Ways, and, therefore, Atkins and Greene, owe BMO $520,907.90 in unpaid

3

principal and interest under the loan agreements. (Anschenbrenner Decl. ¶ 43.) Accordingly, the Court will award $520,907.90 in actual damages.

The agreements also entitle BMO to interest at the rate of 1.5% per month on the money owed to it.[3] (ECF No. 1-1 ¶ 5.3; ECF No. 1-2 ¶ 5.3). Under the agreement, interest accrued starting May 6, 2020, at the rate of $249.96 per day. (Anschenbrenner Decl. ¶ 43.) Thus, the Court will award BMO interest in that amount.

### B. Costs and Attorneys' Fees

The loan agreements entitle BMO to its costs and attorneys' fees. (ECF No. 1-1 ¶¶ 5.2, 7.3; ECF No. 1-2 ¶¶ 5.2, 7.3.) BMO has incurred $6,277.50 in costs and attorneys' fees. (Chapin Decl. ¶¶ 5, 10.) The Court finds this reasonable. Accordingly, it will award BMO $6,227.50 in costs and attorneys' fees.

### C. Possession of the Collateral

The Texas and Illinois Uniform Commercial Codes allow BMO to repossess the collateral based on 64 Ways's breach of the loan agreements. Tex. Bus. & Com. Code Ann. § 9-609; 810 Ill. Comp. Stat. 5/9-609. The loan agreements also permit repossession for nonpayment. (ECF No. 1-1 ¶ 5.2; ECF No. 1-2 ¶ 5.2.) The Court, therefore, will order 64 Ways to surrender possession of the collateral to BMO.

### D. Injunctive Relief

BMO asks the Court to enter an injunction that (1) bars the defendants, or any other entity, from using the collateral; (2) requires the defendants to divulge the location of the collateral; and (3) causes the surrender of the collateral to BMO. To secure a permanent injunction, BMO must demonstrate

---

[3] The loan agreements base interest calculations on a 360-day year comprised of twelve thirty-day months. (ECF No. 1-1, at 1; ECF No. 1-2, at 1.)

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). BMO has shown neither irreparable injury nor that it lacks an adequate legal remedy. The Court, therefore, will not issue an injunction.

BMO claims that, although it knows 64 Ways's address, it cannot locate the collateral because of its highly mobile nature. Moreover, BMO notes that 64 Ways continues to possess and use, or at least has the capability to possess and use, the collateral. As a result, the collateral "depreciates and deteriorates . . . , with no commensurate value being conferred to Plaintiff in the form of payments due and owing from 64 Ways." (ECF No. 14, at 8.) BMO contends, therefore, that "[t]his loss and 64 Ways' continued use of the Collateral irreparably harms Plaintiff and necessitates injunctive relief." (*Id.*)

These allegations do not show that BMO has suffered an irreparable injury or that it lacks an adequate legal remedy. If 64 Ways continues to use the collateral and never returns it to BMO, or if 64 Ways uses the collateral and returns it after causing its value to depreciate, then BMO can sue to recover money damages for that loss. BMO has not indicated that the collateral has special properties that would render such a judgment inadequate compensation for 64 Ways's wrongful possession and use of the collateral. BMO, therefore, has not suffered an irreparable injury, and it has an adequate legal remedy.[4] Accordingly, the Court will not issue an injunction.

---

[4] Because BMO has not shown that it suffered an irreparable injury or that it lacks an adequate legal remedy, the Court need not address the other prerequisites for obtaining a permanent injunction.

5

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part BMO's motion for default judgment. The Court will enter judgment in favor of BMO as to Counts Three and Four in the amount of $520,907.90, plus interest accruing thereon in the amount of $249.96 per day following May 6, 2020. The Court will award BMO $6,227.50 in costs and attorneys' fees. Finally, the Court will order 64 Ways to surrender possession of the collateral to BMO. The Court will not, however, grant BMO's request for an injunction.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 9 December 2020
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge